[No. D009561. Fourth Dist., Div. One. Apr. 25, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
FELIPE SANTIAGO HERNANDEZ, Defendant and Appellant.

**COUNSEL**

Joel M. Kriger, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Janelle B. Davis and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NARES, J.**—An information charged Felipe Santiago Hernandez in count one with driving under the influence of alcohol and neglecting a duty imposed by law which proximately caused bodily injury to another (Veh. Code,[1] § 23153, subd. (a)) and in count two with driving a motor vehicle while having a blood alcohol of at least .10 percent and neglecting a duty imposed by law which proximately caused bodily injury to another (§ 23153, subd. (b).) As to both counts, the information alleged Hernandez had injured more than one victim (§ 23182) and further alleged Hernandez had a prior conviction for driving under the influence of alcohol. After Hernandez waived his right to a jury trial, the court convicted him of both counts and found the allegations to be true. The court granted Hernandez probation for five years conditioned on, among other things, serving 180 days in local custody.[2] Hernandez appeals, challenging the sufficiency of the evidence to support his conviction. We affirm.

### FACTS

About 11:30 p.m. on May 15, 1988, Mary and Charles Alger were driving south on Interstate 15 in Riverside County when Hernandez, erratically driving his red Toyota pickup truck, passed them. Hernandez also swerved to the shoulder to pass several cars. At that time, the truck's lights were on. About 30 minutes later, Mandy Fishman and a friend were driving south on Interstate 15 in San Diego County when they saw Hernandez's truck stopped on the freeway. Fishman's friend, who was driving, swerved out of the lane to avoid hitting the truck. The truck did not have its flashing hazard lights on.

A few minutes later, the Algers were driving in the number three lane when they crashed into the back of Hernandez's truck which was stopped in that lane either straight or at a slight angle. The truck's lights were not on. Although it was a clear evening, the area was unlit. Mrs. Alger did not see the truck until immediately before the impact and did not have a chance to apply her brakes. Mr. Alger saw the truck only an instant before the impact. As a result of the accident, Mrs. Alger had a fractured collarbone, a puncture to the right knee, a broken finger, severe heart contusions and a bruised sternum. Mr. Alger had severe pain in his chest and stomach, moderate neck injuries and a broken finger.

Mark Skinner came to the scene shortly after the crash. When Skinner got out of his car, he saw Hernandez lying in the road about 12 feet from his

---

[1] All statutory references are to the Vehicle Code.

[2] Hernandez was given credit for one day served. The balance of his sentence was stayed pending this appeal.

truck and went to his aid. As Skinner leaned over Hernandez, he smelled alcohol. Skinner noticed the lights on Hernandez's truck were off and asked someone to turn them on.

After the Algers and Hernandez were taken to the hospital by paramedics, California Highway Patrol Officer Wesley Maehler went to the scene to interview witnesses, document physical evidence and remove the vehicles from the freeway. He saw a blood smear on the driver's side door of Hernandez's truck.[3] At the hospital where Hernandez had been taken, Officer Maehler noticed Hernandez was very intoxicated, loud and belligerent; had bloodshot eyes and slurred speech; and smelled of alcohol. Officer Maehler arrested Hernandez for driving under the influence of alcohol.

Hernandez testified at trial, admitting at the time of the accident he was under the influence of alcohol with a blood alcohol of more than .10 percent. He testified that while driving on Interstate 15, his truck stalled. He unsuccessfully tried to start it again while it was still moving but before it came to a complete stop. During this time, he never moved the truck out of the traffic lane toward the shoulder. When asked why he did not disengage the transmission and coast to the side of the road once he started having engine trouble, Hernandez responded "I never had a problem with the car and I was hoping to start it . . . when I was moving." When questioned further, he admitted it was "stupid" to stop in the middle of the freeway.

Hernandez further testified when the truck finally came to a complete stop in the number three lane, he got out and opened the hood. After being unable to determine why the truck had stopped, he closed the hood and was going to release the emergency brake and push the truck off the freeway. As he was about to open the door to do so, the truck was hit from behind.

## DISCUSSION

■ Where a defendant challenges the sufficiency of the evidence on appeal, we review the entire record to see "whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Bloyd* (1987) 43 Cal.3d 333, 346 [233 Cal.Rptr. 368, 729 P.2d 802].) In doing so, we view the facts in the light most favorable to the judgment, drawing all inferences to support the judgment. (*People v. Silva* (1988) 45 Cal.3d 604, 625 [247 Cal.Rptr. 573, 754 P.2d 1070].) Our power as an appellate court begins and ends with the determination whether, on the entire record, there is substantial evidence,

---

[3] The following evening, Officer Maehler went to the tow yard where Hernandez's truck was stored. Upon inspecting it further, the officer found the tip of Hernandez's finger in the doorjamb at the back of the driver's side door.

contradicted or uncontradicted, to support the judgment. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The test on appeal is not whether we believe the evidence at trial established the defendant's guilt beyond a reasonable doubt, but whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People* v. *Provencio* (1989) 210 Cal.App.3d 290, 306 [258 Cal.Rptr. 330].)

■ In challenging the sufficiency of the evidence to support his conviction under section 23153, Hernandez contends he was not "driving" because he was not in the truck when the impact occurred.[4] At the time Hernandez committed the crime, section 23153 provided in part:

"(a) It is unlawful for any person, while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.

"(b) It is unlawful for any person, while having 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver.

"...................................

"(c) In proving the person neglected any duty imposed by law in the driving of the vehicle, it is not necessary to prove that any specific section of this code was violated." Thus, the issue is not whether the evidence shows Hernandez was driving *at the time of the impact,* but whether while driving, he committed an act forbidden by law or neglected a duty imposed by law and as a proximate result caused injury to another person. (See *People* v. *Baxter* (1959) 165 Cal.App.2d 648, 650 [332 P.2d 334].) Consequently, our first inquiry is what constitutes "driving" for purposes of this statute.

In *Henslee* v. *Department of Motor Vehicles* (1985) 168 Cal.App.3d 445 [214 Cal.Rptr. 249], the plaintiff was arrested for driving under the influence when a police officer saw her car parked, with the engine running and the headlights on, facing southbound in the northbound lane of traffic.

---

[4] Hernandez testified he was driving under the influence of alcohol on the night of the accident and does not challenge the sufficiency of this evidence on appeal. Likewise, he does not claim his actions did not proximately cause the Algers' injuries. Thus, we omit any discussion of Hernandez's intoxication and proximate causation.

Plaintiff appeared to be asleep behind the wheel. When the officer woke her, she briefly spoke to him and put the car's transmission into drive, causing the car to move forward several inches. (*Id.* at p. 448.) The Department of Motor Vehicles (DMV) suspended plaintiff's driving privileges for six months for driving under the influence (§ 23152 or 23153) and refusing to submit to a blood-alcohol test. (*Henslee* v. *Department of Motor Vehicles, supra,* at p. 450.) However, in a writ proceeding, the trial court reversed the DMV's order, finding the arrest for driving under the influence was not warranted because plaintiff did not "drive" in the presence of the officer.

On appeal, the court reversed the trial court, holding the term "drive" within the meaning of section 23152, subdivision (a) includes the situation where "an intoxicated individual actively asserts control over a vehicle and takes every step necessary to resume travel along the public road." (*Henslee* v. *Department of Motor Vehicles, supra,* 168 Cal.App.3d at pp. 451-452.) The court reasoned the policies of prevention and deterrence underlying California's drunk driving statutes support the determination that plaintiff "drove" her car in the officer's presence. "[I]t is a 'rational surmise' that one who is seated in a vehicle with the motor on and who places the transmission into drive, 'intends to resume public travel.' [Citation.]" (*Id.* at p. 452.) Thus, the court concluded, plaintiff's conduct posed as much of a threat to public safety as if she had been found traveling on the highway. (*Ibid.*)

In *People* v. *Jordan* (1977) 75 Cal.App.3d Supp. 1 [142 Cal.Rptr. 401], the defendant had been pedaling her moped with the motor operable but switched off when she hit the curb and fell. She was charged with misdemeanor drunk driving (§ 23102, subd. (a)), but the trial court ordered the evidence against her suppressed on the ground she was not "driving" a "motor vehicle." (*Id.* at p. Supp. 4.) On appeal by the People, the court held a person is "driving" a motor vehicle when he or she is steering or controlling a vehicle which is in motion, even if the motor is off at the time.[5] (*Id.* at p. Supp. 10.)

A "driver" is "one who drives or is in physical control of a vehicle." (§ 305.) Courts in other states with statutes similar to California's drunk driving statutes have defined "driving" as steering and controlling a vehicle while in motion (*Thomas* v. *State* (1976) 277 Md. 314 [353 A.2d 256]), allowing a vehicle to coast without using the engine (*Commonwealth* v. *Hogue* (Pa. 1929) 1 D. & C.2d 617), and being in actual physical control of the vehicle even though it may not be moving (*People* v. *Guynn* (1975) 33 Ill.App.3d 736, [338 N.E.2d 239]).[6]

---

[5] The court also held a moped is a "vehicle" within the ambit of the drunk driving laws. (*Id.* at p. Supp. 7.)

[6] Cases interpreting the terms "driving," "operating," and "being in control of" as used in statutes prohibiting driving, operating or being in control of a motor vehicle while intoxicated are collected in Annotation (1979) 93 A.L.R.3d 7.

Here, the uncontradicted evidence shows Hernandez was "driving" his truck when the engine stalled in a traffic lane of the freeway. He was seated in the driver's seat steering or controlling the truck while it was still moving, even though the engine was no longer running. (*People* v. *Jordan, supra*, 75 Cal.App.3d at p. Supp. 10.) No evidence was presented that Hernandez's truck came to an immediate stop. Rather, according to Hernandez's testimony, once the engine stalled, he sat in his truck trying to restart it while it coasted, in an attempt "to resume public travel." (*Henslee* v. *Department of Motor Vehicles, supra*, 168 Cal.App.3d at p. 452.) Without driving onto the shoulder, he allowed the truck to come to a complete stop. He testified he failed to drive the truck out of the traffic lane toward the shoulder while it was still coasting, admitting it was "stupid" to stop in the middle of the freeway. While the truck was in motion and Hernandez maintained control of it, he was posing a threat to public safety and thus, was driving within the meaning of section 23153.

■■■ Having concluded Hernandez was "driving" up until the time his truck came to a complete stop on the freeway, our next inquiry is whether he committed an act forbidden by law or neglected a duty imposed by law. Under section 22520, it is unlawful for any person to stop or leave standing any vehicle on a freeway. One exception is where the vehicle is so disabled that it is impossible to avoid temporarily stopping. (§ 22520, subd. (d).) Hernandez asserts he unavoidably stopped his truck on the freeway only after it became disabled and thus he did not neglect a legal duty under section 22520.

However, whether a vehicle is so disabled that it is impossible to avoid temporarily stopping is a question of fact. (*Lane* v. *Jaffe* (1964) 225 Cal.App.2d 172, 175 [37 Cal.Rptr. 171].) Here, the court found that due to Hernandez's intoxication, he stopped his truck in the number three lane of a heavily traveled freeway at night without the lights of the truck being on, failed to turn on his emergency flashers, and thereby proximately caused the Algers' injuries. The evidence showed Hernandez had the ability, but failed, to pull his truck onto the shoulder while it continued to coast. He failed to coast to the shoulder, not because his truck unavoidably stopped, but because he was hoping to start it while he was still moving. Given this evidence, the "impossibility" exception of section 22520 does not apply here.

Further, under section 22400, subdivision (a), it is unlawful to "bring a vehicle to a complete stop upon a highway so as to impede or block the normal or reasonable movement of traffic unless the stop is necessary for safe operation or in compliance with law." Whether Hernandez, in allowing his truck to come to a complete stop on the freeway, violated this statute was a question for the trier of fact. (See *Shannon* v. *Thomas* (1943) 57

Cal.App.2d 187, 199 [134 P.2d 522].) Here, the court found Hernandez operated his truck unsafely because he had the ability to pull onto the shoulder but failed to do so. Thus, Hernandez neglected a duty imposed by law by violating either section 22520 or 22400, subdivision (a).

■ Moreover, the unlawful omission element of section 23153 need not relate to any specific section of the Vehicle Code, but instead may be satisfied by the defendant's ordinary negligence. (§ 23153, subd. (c); *People v. Oyaas* (1985) 173 Cal.App.3d 663, 669 [219 Cal.Rptr. 243].) ■ Here, while still coasting on the freeway, Hernandez failed to remove his truck from the traffic lane and failed to take steps to warn other drivers by using the truck's flashing hazard lights. (See § 25251, subd. (b) [failure to use emergency flashers].) Thus, Hernandez violated the general duty of a driver on a public street or highway " 'to exercise ordinary care at all times to avoid placing himself or others in danger; . . . to use like care to avoid an accident; . . . [and] [to maintain a proper control of his vehicle].' [Citations.]" (*People v. Oyaas, supra*, 173 Cal.App.3d at p. 669.) Substantial evidence supports the court's findings that Hernandez, as a result of his intoxication, neglected a legal duty in driving his truck and proximately caused the Algers' injuries.

DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.