[No. A047791. First Dist., Div. Four. June 26, 1990.]

GARY WILLIAM MUSIC, Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

## COUNSEL

Les Scher for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, Jose Guerrero and Mara Faust, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**POCHÉ, J.—** ◼◼◼◼ Appellant Gary William Music appeals from a judgment[1] denying his petition for writ of mandate[2] seeking to

---

[1] The notice of appeal was filed before the final judgment was rendered, but after the court had rendered its intended decision, referred to by the court as its "ruling." We construe the premature notice of appeal as being an appeal from the subsequently rendered final judgment of December 14, 1989. (Cal. Rules of Court, rule 2(c).)

[2] Although the petition filed by appellant was labeled traditional mandamus (Code Civ. Proc., § 1085), administrative mandamus (Code Civ. Proc., § 1094.5) is the appropriate method to review the validity of a license suspension under the implied consent laws. (See, e.g., *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383]; *Hughes* v. *Alexis* (1985) 170 Cal.App.3d 800, 812 [216 Cal.Rptr. 550]; *Sinetos* v. *Department of Motor Vehicles* (1984) 160 Cal.App.3d 1172, 1174 [207 Cal.Rptr. 207]; see generally Cal. Administrative Mandamus (Cont.Ed.Bar, 2d ed. 1989) § 3.4, p. 73.) The trial court properly treated the proceeding as one for administrative, not traditional, mandamus. (Cf. *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 813 [140 Cal.Rptr. 442, 567 P.2d 1162] [traditional mandamus treated as proceeding under Code Civ. Proc., § 1094.5]; *Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 336 [136 Cal.Rptr. 421] [administrative mandamus petition treated as petition for traditional mandamus under Code Civ. Proc., § 1085].)

overturn an order of respondent, Department of Motor Vehicles, suspending his driver's license for six months for failing to submit to a chemical test when requested to do so by a police officer. (Veh. Code, §§ 13353, subd. (a); 23157.)[3] The controlling issue on appeal is whether appellant was validly arrested for driving under the influence in that the arresting officer did not actually witness an act of *driving* a motor vehicle. We hold that under such circumstances, a warrantless arrest is invalid. Because a valid arrest is a condition precedent under the implied consent law for suspending a driving privilege (§ 13353, subd. (b); *Padilla* v. *Meese* (1986) 184 Cal.App.3d 1022, 1026 [229 Cal.Rptr. 310]), we reverse.

## A. The Evidence

At approximately 1:40 a.m., on a cold and rainy November 8, 1988, California Highway Patrol Officer Kevin James O'Connor spotted appellant's truck parked in a parking stall in front of the Blue Room Bar on the northbound shoulder of Redwood Drive in Garberville.[4] The engine was running, exhaust was coming out of the exhaust pipe, the yellow parking lights were on, as was the radio, and the window was halfway open, and appellant was "slumped" over the steering wheel. Over the course of the next hour, O'Connor passed by the truck two more times; each time the truck and appellant were in the same condition. "Concerned," O'Connor decided to check on the driver.

O'Connor woke appellant; his eyes were red and glassy, his speech was slow and slurred, there was a strong odor of alcohol on his breath and he appeared confused. Appellant told O'Connor he had been drinking whiskey and "coke" and decided to sleep in the truck "until he was okay to drive home." Appellant claimed to be following a normal practice.

O'Connor asked appellant to turn off the engine. According to O'Connor, appellant was disoriented and "fumbled around trying to grab and find the keys and turn it off and instead of doing that he reached and started messing with the gear shift." Afraid appellant might put the truck into reverse and roll into his patrol car parked immediately behind the truck, O'Connor reached in and turned off the engine. Appellant was asked to leave the truck, was given and failed a number of field sobriety tests, and was placed under arrest. At the police station, and after being advised of the consequences for doing so, appellant refused to submit to one of the three chemical tests.

---

[3] Unless otherwise indicated, all further statutory references are to the Vehicle Code.

[4] According to the police report the truck "extended a few inches past the end of the white painted line of the parking stalls."

Appellant testified he drove his truck to town in the early afternoon, parked in front of the Blue Room (which was closed), and drank with friends in Garberville's other two bars. He walked back to the truck, and slept for "several hours" before he was arrested. Because it was raining, he turned on the engine so the heater would run. Appellant admitted being intoxicated but denied being slumped over the steering wheel: "I was laying in [*sic*] the seat of the truck."

On cross, Officer O'Connor admitted that at no time did he see appellant actually drive the truck down the street. The following colloquy with appellant's trial attorney is instructive:

"[COUNSEL]: So he told you in essence that . . . he had come out of the Blue Room and fallen asleep in the truck.

"OFFICER O'CONNOR: Yes.

"[COUNSEL]: So then you did not have reason to believe that he was driving the truck.

"OFFICER O'CONNOR: Correct.

"[COUNSEL]: And yet you placed him under arrest for driving under the influence?

"OFFICER O'CONNOR: Yes.

". . . . . . . . . . . . . . . . . . .

"[COUNSEL]: Did Mr. Music ask you any questions as to why you were making him do this when in fact he was not driving the vehicle but sleeping?

"OFFICER O'CONNOR: As I recall he did. He was concerned with that and I told him that his vehicle was in the road, his vehicle was running, the lights were on and I was concerned about especially his statement of well I do this all the time, I sleep in the car until I feel I'm okay to drive home.

"[COUNSEL]: Was it reasonable to believe that he had the truck running so the heat would be on?

"OFFICER O'CONNOR: I'm sure it was.

"[COUNSEL]: Especially since the window was down, you seem to think it was crazy that the window was down because it was raining.

"OFFICER O'CONNOR: Yes.

"[COUNSEL]: Okay. Did . . . he actually tell you that he had not been driving the vehicle?

"OFFICER O'CONNOR: I don't recall, I'm sure he did though.

". . . . . . . . . . . . . . . . . . .

"[COUNSEL]: Okay so you never saw him driving and you just said that you really didn't have a reasonable belief that he was driving and I'm having trouble understanding under those circumstances why you told him he had to take either a field sobriety test or one of the tests under the [Vehicle Code] . . . when he hadn't been driving a vehicle.

"OFFICER O'CONNOR: Okay well mainly . . . if a person is in or about their vehicle and he's in control of that vehicle and the vehicle is running and the vehicle is in the road, on the roadway, he is in control of the vehicle and there again what concerned me at that point was his own statement of his determination of when he would be okay to drive and as I talked to him, he was reaching and trying to get the gearshift in gear. At that point, his apparent intoxication, I was concerned that he would continue and go out on the road.

"[COUNSEL]: So you were taking more of a preventative measure is what you're saying.

"OFFICER O'CONNOR: Well the preventative-yes it was preventative in one point but at the same time he is on the road and in control of his own vehicle, the vehicle is running, it's on the road and there's a lot of support there and I can't sit here and give you a particular case but I'm sure I can research it and dig that up."

B.

In affirming the license revocation, the hearing officer made the four findings required by section 13353, subdivision (b):[5] (1) Officer O'Connor

---

[5] At all relevant times to this proceeding, subdivision (b) of section 13353 provided in pertinent part: "For purposes of this section, the scope of the hearing shall cover the issues of whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23152 or 23153, whether the person was placed under arrest,

had reasonable cause to believe that appellant had been driving a motor vehicle in violation of sections 23152 or 23153 (driving under the influence of intoxicating liquor or drugs); (2) appellant was lawfully arrested; (3) appellant was advised that if he refused to submit to a chemical test his driving privileges would be suspended for six months; and (4) appellant refused to submit to a chemical test. With respect to the driving aspect, the hearing officer was impressed with the fact that appellant "attempted to shift gears and have the car move while the motor was running."

Exercising its independent judgment (*Berlinghieri* v. *Department of Motor Vehicles, supra*, 33 Cal.3d at p. 395; *Daly* v. *Department of Motor Vehicles* (1986) 187 Cal.App.3d 257, 261 [232 Cal.Rptr. 7]; *Hughes* v. *Alexis, supra*, 170 Cal.App.3d at p. 806), the superior court affirmed the revocation and remarked: "The facts could be interpreted to support one, [of two], conclusions: [¶] 1. The vehicle was parked, for one hour, with the lights on, engine running, heater on and the defendant slumped over the wheel. The vehicle could be interpreted to not have moved from where Mr. Music parked it earlier in the day in accordance with his testimony; or [¶] 2. The vehicle was parked, in the conditioned [*sic*] listed above, after having been moved or driven by Mr. Music contrary to his testimony. [¶] The Hearing Officer found the second version to be the most likely explanation. This court agrees."

## C.

■ An essential prerequisite for the application of the implied consent law is a lawful arrest for driving under the influence. (§ 13353, subd. (b); see e.g., *Mueller* v. *Department of Motor Vehicles* (1985) 163 Cal.App.3d 681, 684 [210 Cal.Rptr. 14]; *Henslee* v. *Department of Motor Vehicles* (1985) 168 Cal.App.3d 445, 451 [214 Cal.Rptr. 249]; *Buttimer* v. *Alexis* (1983) 146 Cal.App.3d 754, 758 [194 Cal.Rptr. 603].) Stated another way, a driver's license cannot be suspended under the implied consent law if the arrest is unlawful. (*Padilla* v. *Meese, supra*, 184 Cal.App.3d at p. 1026.)

■ In order to make a warrantless arrest for a misdemeanor the arresting officer must have reasonable cause to believe that the person committed the offense *in his presence*. (Pen. Code, § 836, subd. 1.)[6] An arrest for

whether the person refused to submit to, or did not complete, the test or tests after being requested by a peace officer, and whether . . . the person had been told that his or her driving privilege would be suspended or revoked if he or she refused to submit to, or did not complete, the test or tests."

[6] Penal Code section 836 provides in pertinent part: "A peace officer may . . . without a warrant, arrest a person: [¶] 1. When he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence. . . ."

misdemeanor drunk driving, therefore, is invalid unless the police officer witnesses or perceives the act of driving under the influence. (*Padilla* v. *Meese, supra,* 184 Cal.App.3d at p. 1026; *Henslee* v. *Department of Motor Vehicles, supra,* 168 Cal.App.3d at p. 451.) "Whether the offense is committed in the officer's presence is to be determined by the events observable to the officer at the time of the arrest. 'If the officer cannot testify, based on his or her senses, to acts which constitute every material element of the misdemeanor, it cannot be said that the officer has reasonable cause to believe that the misdemeanor was committed *in his presence.*' [Citation omitted.]" (*People* v. *Welsch* (1984) 151 Cal.App.3d 1038, 1042 [199 Cal.Rptr. 87] [italics in original]; accord *Padilla* v. *Meese, supra,* 184 Cal.App.3d at p. 1027.) As put plainly by Justice Sparks in *Padilla* v. *Meese*: "In order to perceive the act of illegally driving a vehicle while under the influence of intoxicating liquor the officer must be able to detect the driving through one of his senses. Thus in order to make a valid arrest for misdemeanor drunk driving it is necessary that the officer be present at the scene where the driving occurred so that he can perceive it." (*Id.,* 184 Cal.App.3d at p. 1027.)

■   If one views this case as did the trial court judge, then clearly the arrest was invalid. Under that scenario, appellant drove his truck before he was even spotted by Officer O'Connor. Because the officer was not and could not have been present or have witnessed the driving, Officer O'Connor could not legally arrest appellant for the misdemeanor crime. (*People* v. *Engleman* (1981) 116 Cal.App.3d Supp. 14, 19 [172 Cal.Rptr. 474].) Perhaps aware of this problem with the trial court's analysis, respondent does not bother to advance the trial court's reasoning in support of the judgment. Instead, respondent argues that O'Connor did witness the driving, and that the act of driving occurred when appellant, with engine running, and lights on, attempted to turn off the engine but in confusion hit the gear shift. Primary reliance for this novel proposition is placed upon a rather expansive definition of the term "driving" rendered by the Court of Appeal in *Henslee* v. *Department of Motor Vehicles, supra,* 168 Cal.App.3d 445.

In *Henslee,* the arresting officer came upon a parked vehicle facing southbound in a northbound lane of a city street. The engine was running, the lights were on, and the driver was asleep behind the wheel. The officer woke up the driver who proceeded to put the transmission into " 'drive.' " The car traveled several inches before the officer could "reach in and physically stop" the driver "from proceeding." The driver "repeated this conduct two or three more times" but was stopped each time by the police officer. (*Henslee, supra,* 168 Cal.App.3d at p. 448.)

On these facts, the court had no hesitation in finding a lawful warrantless arrest for driving under the influence: "In our opinion the term 'drive'

within the meaning of [Veh. Code § 23152, subd. (a)] includes the situation where, as here, an intoxicated individual *actively asserts control over a vehicle and takes every step necessary to resume travel along the public road.* Accordingly, we hold that as a matter of law respondent 'drove' her vehicle in the presence of Officer Viveiros and therefore find her arrest for driving while intoxicated was lawful." (*Henslee* v. *Department of Motor Vehicles, supra,* 168 Cal.App.3d at pp. 451-452 [italics added].)[7]

In so holding, however, the court factually distinguished *People* v. *Engleman, supra,* 116 Cal.App.3d Supp. 14, a case almost on all fours with this one.

In *Engleman,* the police found the defendant at 3 in the morning, asleep behind the wheel of his car parked on the shoulder of the road. The engine was running, but the car was in park. The defendant did not awaken until the officer rapped on the window for several minutes. The defendant was arrested for driving under the influence and then failed a breath test, the results of which were admitted into evidence at trial. On appeal, the appellate department of the superior court held the breath tests were inadmissible because they were the product of an illegal warrantless arrest: "A peace officer may make a lawful warrantless arrest for a misdemeanor only if he has reasonable cause to believe that it is being committed in his presence. (Pen. Code, § 836, subd. 1.) Defendant did not drive his car in the presence of the officers and therefore could not be validly arrested for this offense." (*People* v. *Engleman, supra,* 116 Cal.App.3d at p. Supp. 19.)

In distinguishing *Engleman,* the *Henslee* court noted that the driver before it had parked "the wrong way *in a traffic lane* and, unlike the defendant in *Engleman,* she actively placed the car in 'drive' and would have continued but for the officer's quick actions." (*Henslee, supra,* 168 Cal.App.3d 445, 453.) But as noted by the court in *Padilla* v. *Meese,* "the better distinction" is that in *Henslee* the driver actually *moved the car in the officer's presence,* whereas in *Engleman* (like the case at hand) no movement

---

[7] As noted in *Padilla v Meese, supra,* 184 Cal.App.3d 1022, the definition of driving used in *Henslee* is normally the definition given to *operating* a vehicle. (*Id.* at p. 1028, fn. 1.) "The reason that the term 'operating' is broader than driving is that, as defined in nearly all of the cases, operating does not require that the vehicle be in motion. Thus, it has been held that the term 'operate' is not limited to moving a vehicle from one place to another, that a person may be convicted of operating a motor vehicle without it necessarily being shown that the automobile was actually in motion or even had the engine going, and that 'to operate' is not limited to a state of motion, but also includes, under the management theory, stops and parking on the highway as they are to be fairly regarded as a necessary incident to the operation." (Annot., What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance (1979) 93 A.L.R.3d 7, 16 [fns. omitted].)

occurred in the officer's presence. (*Padilla* v. *Meese, supra,* 184 Cal.App.3d 1022, 1028.)

*Padilla,* like *Engleman,* is factually more akin to this case than is *Henslee.* In *Padilla,* a highway patrol officer received a call from an inspector at an agricultural inspection station to the effect that he had stopped a car whose driver was intoxicated. When the officer arrived at the inspection station, he found Padilla sitting in the driver's seat with the engine running. The issue presented was whether the highway patrol officer was present during the commission of the misdemeanor drunk driving so that he could validly arrest Padilla without a warrant. Discussing *Henslee,* the court stated: "It is true that the driver in *Henslee* only moved the car slightly. But the movement need not be extensive; even a matter of a few inches will suffice to constitute driving. *In our view, if the driver does not move the vehicle in the officer's presence, the offense is not committed in his presence.* Here Officer Nagel conceded that no driving occurred in his presence; the car, although running, was not moved. We are thus constrained to agree that the offense did not occur in Officer Nagel's presence for purposes of Penal Code section 836. [Citations.]" (*Padilla* v. *Meese, supra,* 184 Cal.App.3d 1022, 1029 [italics added].)

Thus as we read *Padilla, Engleman,* and *Henslee,* if the driver does not move the vehicle in the officer's presence at least a few inches, the offense of driving under the influence has not occurred in the officer's presence. Any ensuing warrantless arrest is invalid.

Here, the evidence shows without contradiction that appellant did not move the truck in the officer's presence. In fact, appellant did not even manage to put the truck in gear in the officer's presence. Officer O'Connor's prudent action of turning off the engine ensured that appellant did not move the truck: it also prevented the crime from occurring in his presence. The resulting arrest therefore violated the presence requirement of Penal Code section 836, subdivision 1.[8]

---

[8] Misplaced is respondent's reliance upon *People* v. *Wilson* (1985) 176 Cal.App.3d Supp. 1 [222 Cal.Rptr. 540]. At issue in *Wilson* was not the validity of a warrantless arrest but rather the sufficiency of the evidence to support a conviction of driving under the influence. Carefully distinguishing the former situation, which requires slight movement of the vehicle in the officer's presence, the *Wilson* court held that the element of driving for purposes of proving the offense at trial could be established by circumstantial evidence. (At p. Supp. 9 [text and fn. 4].) *Wilson* does not support respondent's view that appellant drove the truck in Officer O'Connor's presence within the meaning of Penal Code section 836.

Equally distinguishable is the recent case of *People* v. *Hernandez* (1990) 219 Cal.App.3d 1177 [269 Cal.Rptr. 21], which addressed the sufficiency of the evidence to support a conviction under section 23153 (driving under the influence and neglecting a duty imposed by law which proximately causes bodily injury to another). There, the defendant's truck stalled while on the interstate. Instead of moving to the shoulder, the defendant attempted to restart

Appellant's arrest was therefore illegal, unless some exception to the presence requirement applies. The only exception advanced by respondent is that contained in section 40300.5, namely, a police officer may arrest without a warrant if he observes an obviously intoxicated person "in or about a vehicle which is obstructing a roadway."[9] But here, the uncontradicted evidence shows that appellant's truck was not obstructing a roadway. Instead, it was properly parked in a parking stall, extending only a few *inches* past the painted line. (See fn. 4, *ante.*) By even the most liberal interpretation (cf. § 40300.6)[10] obstruction of a roadway did not occur here.

We therefore conclude on this undisputed record that Officer O'Connor did not legally arrest appellant for driving under the influence. The implied consent statute and its penalty for noncompliance may not be applied to appellant.

The judgment is reversed and the cause is remanded with directions to issue a peremptory writ of mandate directing the Department of Motor Vehicles to set aside its order of suspension. Appellant to recover his costs on appeal.

Anderson, P. J., and Perley, J., concurred.

---

the vehicle while it still was moving. The truck came to a complete stop and was subsequently hit from behind, causing injuries to the driver and passenger of that car. The court had no hesitation in finding that the defendant was "driving" up until the time the truck came to a complete stop: "While the truck was in motion and [defendant] maintained control of it, he was posing a threat to public safety and thus, was driving within the meaning of section 23153." (*Id.* at p. 1184.) Nothing we have said today would lead to a contrary conclusion in *Hernandez.*

[9] Section 40300.5 provides: "Notwithstanding any other provision of law, a peace officer may, without a warrant, arrest a person who is (1) involved in a traffic accident or (2) observed by the peace officer in or about a vehicle which is obstructing a roadway, when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug."

[10] Section 40300.6 provides: "Section 40300.5 shall be liberally interpreted to further safe roads and the control of driving while under the influence of an alcoholic beverage or any drug in order to permit arrests to be made pursuant to that section within a reasonable time and distance away from the scene of a traffic accident. . . ."