Filed 7/19/22  P. v. Morrison CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094731 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE003473) |
| v. | |
| CAYLEH MORRISON, | |
| Defendant and Appellant. | |

While intoxicated and riding in the front passenger seat of her boyfriend's car, defendant Cayleh Morrison became angry and yanked the steering wheel, causing the car to crash.  A passenger in the backseat was ejected from the vehicle and died.  A jury convicted defendant of gross vehicular manslaughter while intoxicated.  (Pen. Code, § 191.5, subd. (a).)[1]  The trial court sentenced defendant to the middle term of six years in prison.  As part of the sentencing, the court provided a "*Watson* advisement"[2] under Vehicle Code section 23593, subdivision (a).

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*).

On appeal, defendant argues that her conviction should be reversed because (1) she was convicted on a legally invalid theory of gross vehicular manslaughter while intoxicated; (2) the court erred by instructing the jury on the legally invalid theory; and (3) the prosecutor committed prejudicial misconduct during closing arguments. She also argues that (4) the trial court erred in giving her a *Watson* advisement; and (5) she is entitled to remand for resentencing in light of recent amendments to the determinate sentencing law. (§ 1170 et seq.) Agreeing only with the last two contentions, we shall vacate the sentence and remand for resentencing. We otherwise affirm the judgment of conviction.

BACKGROUND FACTS AND PROCEDURE

In accordance with the applicable standard of review, we summarize the relevant facts in the light most favorable to the verdict. (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1013.)

On the night of January 11, 2020, defendant, her boyfriend Brandon, Brandon's friend "CJ," and two of CJ's friends (Donnie and Sean), went out for drinks at bars in Folsom, California. Brandon drove in his car. The group had been drinking before going out and continued to consume alcohol at the bars.

At one of the bars, defendant and Brandon got into an argument that stemmed from defendant seeking to purchase cocaine using her debit card. Brandon became irritated and snatched the debit card from defendant's hand. Defendant "flipped out" and became physical with Brandon. In response, Brandon threw her debit card over a railing and left the bar.

Around 1:30 a.m., Brandon returned with his car to give the group a ride home. As they loaded into Brandon's car, defendant sat in the front passenger seat, while CJ, Donnie, and Sean sat in the back. By that time, everyone in the group was "buzzed" or drunk. Sean testified at trial that he was "pretty drunk," although he remembered Donnie and CJ as being "coherent." Brandon testified that he was "slightly buzzed," but felt

2

sober enough to drive. Both Donnie and Sean believed that Brandon's driving that night was "fine" or "normal."

The mood between Brandon and defendant on the ride home was tense. Defendant was drunk and arguing with Brandon. At some point, the argument turned to defendant's debit card. Defendant repeatedly asked Brandon what happened to her card. Brandon eventually told her that he had tossed it away. Upon hearing this, defendant lunged toward the driver's side of the vehicle and yanked the steering wheel, causing the car to veer hard to the right. Brandon cursed and tried to counter-steer to correct the vehicle's path. The vehicle struck the curb, crossed the sidewalk, and collided with a pole, fire hydrant, and water main.

Analysis of the vehicle's airbag control module revealed that the vehicle had been traveling about 80 miles per hour (in a 50 mile-per-hour zone) when it made an abrupt right turn, consistent with someone cranking the steering wheel to the right. The system showed that the front driver side seat belt had been buckled, but the front passenger side seat belt had not. The brakes were not activated.

The force from the collision ejected CJ from the vehicle. CJ ended up lying in a parking lot with water from the damaged fire hydrant pouring over him. Brandon saw CJ, panicked and fled, but surrendered to law enforcement a day or two later. The paramedics arrived and pronounced CJ dead at the scene. The cause of death was determined to be blunt force head injuries consistent with being ejected from the vehicle.

An officer from the California Highway Patrol testified that defendant appeared to be under the influence of alcohol at the scene of the accident. She had red, watery eyes and an odor of alcohol on her breath. Defendant was transported to the hospital where she was questioned by the same officer. Defendant told the officer several times that she was drunk. A blood sample taken from defendant about 75 minutes after the collision indicated that she had a blood-alcohol content (BAC) of 0.197 percent, more than double

3

the legal limit of 0.08 percent. Based on a standard elimination rate, defendant's BAC was estimated to have been about 0.22 percent at the time of the collision.

A. *The defense case*

Blood samples taken from Donnie and Sean after the collision indicated that Sean had a BAC of 0.222 percent and that Donnie had a BAC of 0.101 percent. Donnie's blood sample also revealed the presence of 137 nanograms per milliliter of cocaine metabolites. A defense forensic toxicologist testified that Sean likely was barely conscious when the crash occurred, and that Donnie's alcohol and cocaine use probably diminished his ability to perceive and remember events before the crash. The toxicologist also testified that based on Brandon's statement that he felt "buzzed," Brandon's BAC was likely 0.10 percent or more.

B. *The jury's verdict and sentencing*

The People filed an information charging defendant with one count of gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (a).) After trial, the jury found defendant guilty as charged. On August 20, 2021, the trial court sentenced defendant to the middle term of six years in prison. On August 31, 2021, defendant filed a timely notice of appeal.

DISCUSSION

I

*Gross Vehicular Manslaughter While Intoxicated*

Defendant contends that her conviction must be reversed because the jury relied upon a legally invalid theory of gross vehicular manslaughter while intoxicated. We find no error.

"Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a

4

felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." (§ 191.5, subd. (a).) The elements of this offense are: (1) driving a vehicle while intoxicated; (2) while so driving, committing with gross negligence either an unlawful act not amounting to a felony or a lawful act that might produce death; and (3) the killing of a human being as a proximate result of the grossly negligent conduct. (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1159, disapproved on another ground in *People v. Cook* (2015) 60 Cal.4th 922, 939; *People v. Thompson* (2000) 79 Cal.App.4th 40, 51-54.)

The trial court instructed the jury with CALCRIM No. 590, the pattern instruction on gross vehicular manslaughter while intoxicated, which tracks the elements of the offense and has been found to be an accurate and complete statement of the law. (*People v. Johnigan* (2011) 196 Cal.App.4th 1084, 1092.) As relevant here, the trial court instructed the jury:

"To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant drove while having a blood alcohol level of 0.08 or higher; [¶] 2. While driving that vehicle under the influence of an alcoholic beverage, the defendant also committed an infraction; [¶] 3. The defendant committed the infraction with gross negligence; [¶] AND [¶] 4. The defendant's grossly negligent conduct caused the death of another person.

"The People allege that the defendant committed the following infraction: [¶] Violation of Vehicle Code section 21701, willful interference with driver: No person shall willfully interfere with the driver of a vehicle or with the mechanism thereof in such manner as to affect the driver's control of the vehicle."

Trial courts have a duty to screen out legally invalid theories of conviction. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1131.) A legally invalid theory is one " 'which, if relied upon by the jury, could not *as a matter of law* validly support a conviction of the

5

charged offense.' " (*People v. Calderon* (2005) 129 Cal.App.4th 1301, 1306, original italics.)

Defendant contends that she was convicted on a legally invalid theory because willful interference with the driver cannot serve as the predicate infraction for the charged crime. She argues that the crime of gross vehicular manslaughter while intoxicated requires the defendant to commit a predicate infraction "while driving," and that it is legally impossible for a person to interfere with the driver while driving. Thus, she contends, willful interference with the driver cannot be the predicate infraction for the crime of gross vehicular manslaughter while intoxicated.

The proper interpretation of a statute is a question of law, subject to de novo review. (*Subaru of America, Inc. v. Putnam Automotive, Inc.* (2021) 60 Cal.App.5th 829, 836.) As in any statutory interpretation case, our fundamental task is to determine the Legislature's intent so as to effectuate the purpose of the law. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) We begin by examining the actual language of the statute, giving its words their usual and ordinary meaning. (*Ibid.*) We look to the entire substance of the statute and the overall statutory scheme to effectuate the Legislature's intent. (*Ibid.*; *People v. Jacobo* (2019) 37 Cal.App.5th 32, 42.)

Applying these principles here, we conclude that willful interference with the driver is a valid predicate infraction for the crime of gross vehicular manslaughter while intoxicated. Defendant's argument to the contrary rests on a flawed premise: that there can be only one "driver" at any given point in time. Although this argument may have some surface appeal, it is legally incorrect. As the jury was instructed, "[a] *driver* is a person who drives or is in actual physical control of a vehicle. [¶] A person *drives* a vehicle when he or she intentionally causes it to move by exercising actual physical control over it. The person must cause the vehicle to move, but the movement may be slight." (CALCRIM No. 2241, original italics; Veh. Code, § 305; *Mercer v. Department*

6

*of Motor Vehicles* (1991) 53 Cal.3d 753, 763-768; see *Music v. Department of Motor Vehicles* (1990) 221 Cal.App.3d 841, 850.)

Under the facts of this case, there were two people "driving" the vehicle. When defendant reached over and yanked the steering wheel, she exercised physical control over the movement of the vehicle and caused it to change direction. Thus, she was "driving" within the meaning of section 191.5. (*In re F.H.* (2011) 192 Cal.App.4th 1465, 1469-1472 [concluding that passenger who grabbed steering wheel and caused crash was driving within the meaning of Vehicle Code section 305]; *In re Queen T.* (1993) 14 Cal.App.4th 1143, 1145 [minor's act of steering the car, without controlling the accelerator or brakes, rendered her a driver].) Defendant, however, never had complete or exclusive control of the vehicle. Brandon, seated in the driver's seat, retained control of the vehicle's accelerator, brake pedal, and other operational components. Thus, he also was "driving" the vehicle.

We reject defendant's contention that there can be only one driver at any given point in time. *People v. Verlinde, supra*, 100 Cal.App.4th 1146 is instructive. In that case, two intoxicated persons were (at the start of a trip) jointly operating a car, with one person handling the steering while the other manipulated the pedals. (*Id.* at pp. 1155, 1160.) In dicta, the court concluded that "[t]his evidence conclusively established that . . . both of them were driving the vehicle [citation] while under the influence of alcohol . . . ." (*Id.* at p. 1160; see *In re Queen T., supra*, 14 Cal.App.4th at p. 1145, fn. 2 [minor's act of steering the car rendered her a "driver," even if she was not the only driver].)

Likewise, on facts strikingly similar to our case, the appellate court in *In re F.H., supra*, 192 Cal.App.4th 1465 affirmed a conviction for driving under the influence causing injury (Veh. Code, § 23153), where an intoxicated juvenile, riding in the front passenger seat, angrily grabbed the steering wheel and caused a crash. (*Id.* at pp. 1467-1468, 1472.) The defendant in that case raised the same argument presented here, that

7

"she could not have been driving and at the same time interfering with the driver, because that would be tantamount to interfering with herself." (*Id*. at p. 1473.) The appellate court rejected her argument as "a poor attempt at sophistry. [The victim] was driving until defendant interfered with him by usurping control of the car." (*Ibid*.)

Pursuant to California's definition of a "driver," we conclude that more than one person can be driving a vehicle at any given time. It follows that willful interference with the driver is a valid predicate infraction for the crime of gross vehicular manslaughter while intoxicated. Accordingly, defendant was convicted under a legally valid theory. Her constitutional rights were not violated.

Our conclusion here also disposes of defendant's claim that the trial court erred by instructing the jury with a legally invalid theory.

II

*Prosecutorial Misconduct*

During closing argument, defense counsel used selective portions of testimony to argue that the prosecution failed to prove beyond a reasonable doubt that defendant grabbed and yanked the steering wheel. In rebuttal, the prosecution argued that defense counsel was taking statements "out of context." The prosecutor told the jury: "[R]ead those back, read them back, read them in context, and read them in totality, and sure— sure, [defense counsel's] job on cross-examination is to get them to say whatever they want and to get them to say those things, but look at the context."

On appeal, defendant argues that the prosecutor committed prejudicial misconduct and violated her constitutional rights by suggesting it was "defense counsel's job to obscure the truth, confuse the jury, and get the prosecutor's witnesses to say whatever defense counsel wants." The Attorney General responds that defendant forfeited this issue by failing to object below. We agree the issue was forfeited.

" '[The] initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and

8

admonition would have cured the harm. If it would, the contention must be rejected . . . ; if it would not, the court must then and only then reach the issue whether on the whole record the harm resulted in a miscarriage of justice within the meaning of the Constitution.' [Citations.]" (*People v. Bell* (1989) 49 Cal.3d 502, 535 (*Bell*); accord, *People v. Gionis* (1995) 9 Cal.4th 1196, 1215.) The same rule applies when the defendant asserts the claim as one involving denial of due process. (*Bell, supra*, at p. 535, fn. 17.)

Here, the prosecutor's comment—that it was defense counsel's "job" to get prosecution witnesses to say whatever defense counsel wants—was not so extreme that an admonition would not have cured any harm.

We take guidance from *Bell, supra*, 49 Cal.3d 502. In that case, the prosecutor commented that it was defense counsel's " 'job' " to confuse the jury and " 'throw sand in [its] eyes' " to prevent a guilty verdict. (*Id*. at p. 538.) The Supreme Court concluded that such remarks arguably were improper because they might be misunderstood to suggest that defense counsel was obligated or permitted to present a dishonest defense. (*Ibid*.) However, the court concluded that an objection was required because the misleading aspect of the argument could have been cured by an admonition. (*Id*. at p. 539.) Because the defendant failed to object, the court held that the issue must be deemed "waived." (*Id*. at p. 539.)

The Supreme Court reached a similar conclusion in *People v. Cunningham* (2001) 25 Cal.4th 926. In that case, the prosecutor commented that defense counsel's job was to " 'create straw men,' " to " 'put up smoke, red herrings,' " and that it was the prosecution's job to " 'straighten that out and show you where the truth lies.' " (*Id*. at p. 1002.) The Supreme Court concluded that these comments were not so extreme that an admonition would not have cured any harm. (*Ibid*.) Thus, by failing to object, defense counsel "waived" the claim that the prosecutor committed prejudicial misconduct. (*Ibid*.)

The remarks at issue in this case were milder than those in *Bell* and *Cunningham*. A timely objection and admonition surely would have cured any impropriety. Thus, to the extent there was any prosecutorial misconduct, we conclude defendant forfeited the claim by failing to object and request an admonition.

Anticipating forfeiture, defendant argues that counsel's failure to object constituted ineffective assistance of counsel. To establish ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).) We conclude that defendant has failed to satisfy either prong of the *Strickland* test.

Judicial scrutiny of counsel's performance is highly deferential. (*Strickland, supra*, 466 U.S. at p. 689.) Because of the difficulties inherent in evaluating attorney performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Ibid*.) "[F]ailure to make a futile or unmeritorious objection is not deficient performance." (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1092.)

Here, defense counsel reasonably may have concluded that objecting to the prosecutor's comment would have been futile or unmeritorious because the jury was not likely to misconstrue the prosecutor's remarks in an objectionable fashion. " ' "To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." ' [Citation.]" (*People v. Adams* (2014) 60 Cal.4th 541, 577.)

Numerous cases have rejected claims of prosecutorial misconduct involving comments similar to, or more provocative than, those made here. (See *People v. Kennedy* (2005) 36 Cal.4th 595, 626, overruled in part on other grounds as stated in *People v. Williams* (2010) 49 Cal.4th 405, 459 [not prosecutorial misconduct to argue defense was attempting to confuse the jury]; *People v. Breaux* (1991) 1 Cal.4th 281, 305-306 [not misconduct to suggest defense was trying to sow confusion]; *People v. Gionis, supra*, 9 Cal.4th at pp. 1215, 1216 [not misconduct to suggest defense counsel was "arguing out of both sides of his mouth"]; *People v. Medina* (1995) 11 Cal.4th 694, 759 [not misconduct to observe that any experienced defense attorney will attempt to " 'twist' " and " 'poke' " at the prosecution's case]; *People v. Marquez* (1992) 1 Cal.4th 553, 575 [not misconduct to refer to defense as " 'smokescreen' " and liken defense witnesses to " 'myna birds' "]; *People v. Mitcham* (1992) 1 Cal.4th 1027, 1081, 1082 [prosecutor's argument that defense was trying to " 'dazzle [jury] with BS' " and " 'baffle [jury] with [a] red herring' " was fair comment on evidence and did not imply counsel had fabricated a defense]; *People v. Cummings* (1993) 4 Cal.4th 1233, 1303, overruled on unrelated grounds in *People v. Merritt* (2017) 2 Cal.5th 819, 821-822, 831 [prosecutor's statement that a lawyer as persuasive as defense counsel " 'could maybe get [the witness] to say almost anything' " could not reasonably be understood as assertion that defense sought to elicit perjured testimony].) Based on this authority, defense counsel reasonably could have concluded that any objection to the prosecutor's comment would have been overruled.

In any event, defendant has failed to show prejudice. To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (*Strickland, supra*, 466 U.S. at p. 693; *Ledesma, supra*, 43 Cal.3d at p. 217.) The defendant must show there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. (*Strickland*, at p. 694; *Ledesma*, at pp. 217-218.) A reasonable probability is a

11

probability sufficient to undermine confidence in the outcome. (*Strickland*, at pp. 217-218; *Ledesma*, at p. 218.)

Here, even if counsel had objected, and the court had given an admonition, it is not reasonably probable that the result of the proceeding would have been any different. The prosecutor's fleeting comment was more likely to be understood by the jury as an admonition not to be misled by statements taken out of context, than as a personal attack on counsel's integrity. (See *People v. Cunningham, supra*, 25 Cal.4th at p. 1002 [no reasonable likelihood jury improperly influenced by remarks that defense counsel's job is to " 'create straw men,' " " 'put up smoke' " and " 'red herrings' "]; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 190 [statement that defense counsel's job was to confuse the jury and sidetrack deliberations posed little danger of prejudice]; *People v. Fierro* (1991) 1 Cal.4th 173, 212-213 [no likelihood that personal rebuke to defense counsel prejudiced the defendant].) Further, the jury was instructed that it was responsible for deciding the facts based on the evidence presented, and that nothing the attorneys said was evidence. We perceive no realistic likelihood that defense counsel's failure to object prejudiced defendant.

### III

*Sentencing Issues*

A.     Watson *advisement*

During sentencing, the trial court provided defendant with a "*Watson* advisement" under Vehicle Code section 23593, subdivision (a).**3** The advisement, based on *Watson,*

---

**3**     Vehicle Code section 23593 provides in relevant part: "(a) The court shall advise a person convicted of a violation of Section 23103, as specified in Section 23103.5, or a violation of Section 23152 or 23153, as follows: [¶] 'You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed,

12

*supra*, 30 Cal.3d 290, warned her about the dangers of drinking and driving, and that she could be charged with murder if she killed someone while driving under the influence. The advisement was noted in the sentencing minutes and abstract of judgment.

Defendant contends the trial court erred when it provided the *Watson* advisement because Vehicle Code section 23593, by its terms, does not apply to her conviction. She asks us to strike the advisement and order that it not be used against her in any future proceeding.

We agree with defendant that the trial court's advisement was legally unauthorized. An advisement under Vehicle Code section 23593 applies to persons "*convicted of* a violation of Section 23103, as specified in Section 23103.5, or a violation of Section 23152 or 23153." (Veh. Code, § 23593, subd. (a), italics added.) Defendant's conviction was under section 191.5. Thus, the statute does not apply to her conviction. (See *In re Dean W.* (2017) 16 Cal.App.5th 970, 975 [questioning, without deciding, whether a *Watson* advisement was improper because a juvenile ward was not convicted of driving under the influence].)

The Attorney General argues that Vehicle Code section 23593 merely delineates the circumstances under which courts *must* give a *Watson* advisement, but does not prohibit courts from giving a *Watson* advisement in other circumstances. Hence, a trial court has discretion to give a *Watson* advisement in any other case it deems reasonable. We are unpersuaded.

The power to define crimes and fix penalties is a legislative function, vested exclusively in the legislative branch. (*People v. Navarro* (1972) 7 Cal.3d 248, 258;

---

you can be charged with murder.' " (Veh. Code, § 23593, subd. (a).) The purpose of this advisement is to advance a penal goal, i.e., to make it easier to prove the malice required for second degree murder if defendant later drives while intoxicated and, as a result, someone is killed. (See Senate Rules Com., 3d reading analysis of Assem. Bill No. 2173 (2003-2004), as amended June 9, 2004, p. 3.)

22A Cal.Jur.3d (2022) Criminal Law: Posttrial Proceedings, § 343.) "A sentencing court has a duty to impose the punishment prescribed by law (§ 12), and has no discretion to deviate from the statutorily specified penalty. [Citation.]" (*People v. Martinez* (2015) 240 Cal.App.4th 1006, 1012; accord, *People v. Lara* (1984) 155 Cal.App.3d 570, 574.)

Here, the Attorney General has not cited, nor have we found, any statutory authority giving trial courts the power to issue a *Watson* advisement whenever a court deems it reasonable. And we lack the power to "rewrite [section 23593] to make it conform to a presumed intention which its terms do not express." (*Abbott Laboratories v. Franchise Tax Bd.* (2009) 175 Cal.App.4th 1346, 1360.) Accordingly, we conclude the advisement was improper and direct the trial court to strike the advisement from the record of conviction.

B.      *Amendments to section 1170*

While this appeal was pending, the Legislature amended the determinate sentencing law (§ 1170) to create a presumption in favor of the lower prison term whenever a defendant's " 'youth' " was a contributing factor in the offense.[4] (§ 1170, subd. (b)(6)(B); Stats. 2021, ch. 731, § 1.3; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) Section 1016.7 defines "youth" for purposes of this statute as "any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b); Stats. 2021, ch. 695, § 4.)

---

[4]      As amended, section 1170, subdivision (b)(6) provides in relevant part: "Notwithstanding [section 1170, subdivision (b)(1)], and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6); Stats. 2021, ch. 731, § 1.3.)

14

Defendant argues that due to her age (22 years old at the time of the offense), she meets the statutory criteria for the lower term presumption. She also argues that this amendment applies retroactively to her case because her judgment was not final when the legislation took effect. Thus, she contends we should remand for resentencing in light of the new legislation.

The Attorney General agrees, as do we, that the change in law applies retroactively to defendant's case under *In re Estrada* (1965) 63 Cal.2d 740. (*People v. Flores, supra*, 73 Cal.App.5th at p. 1039.) Accordingly, defendant's six-year midterm sentence shall be vacated and the matter remanded so that the trial court may exercise its sentencing discretion in light of the new legislation.

## DISPOSITION

We affirm the verdict, but vacate the sentence and remand for resentencing in light of recent amendments to section 1170. On remand, the court is directed to strike the advisement made under Vehicle Code section 23593, subdivision (a) from the sentencing minutes and abstract of judgment. Following resentencing, the trial court clerk shall prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

             KRAUSE           , J.

We concur:

       MAURO          , Acting P. J.

       EARL           , J.