Filed 8/15/14  P. v. Rinney CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT JOHN RINEY,<br><br>    Defendant and Appellant. | B248794<br><br>(Los Angeles County<br>Super. Ct. No. GA086547) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jared D. Moses, Judge.  Modified and, as modified, affirmed with directions.

Landra E. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Margaret E. Maxwell, Deputy Attorney General, for Plaintiff and Respondent.

Appellant Robert John Riney appeals from the judgment entered following his convictions by jury on two counts of corporal injury upon a spouse (Pen. Code, § 273.5, subd. (a); counts 1 & 4), and count 3 – dissuading a witness (Pen. Code, § 136.1, subd. (b)(1))[1] with court findings he suffered a prior felony conviction (Pen. Code, § 667, subd. (d)) and a prior serious felony conviction (Pen. Code, § 667, subd. (a)). The court sentenced appellant to prison for 11 years. We modify the judgment and, as modified, affirm it with directions.

## FACTUAL SUMMARY

1. *People's Evidence*.

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established in 2012, Mary Riney (Mary) and appellant were married and living in a South Pasadena apartment. Appellant suffered from anxiety and depression, and he was bipolar. During the few months before May 2012, his behavior was erratic and "off-the-wall." A month before May 17, 2012, appellant was taking his medications, but at some point thereafter but before May 17, 2012, he stopped taking his medications.

Count 1 is based on events occurring on May 17, 2012. On that date, appellant had an episode that Mary described as a manic psychotic state, and he became angry and physical towards her. Mary tried to pack items in a suitcase and leave, but appellant repeatedly threw items out of the suitcase. She called the police and, later under their supervision, packed and left.

---

[1] The information alleged as to each of counts 1 and 4 appellant committed the above corporal injury offenses, alleged as count 2 appellant committed false imprisonment, and alleged as count 3 appellant dissuaded a witness. Count 2 was dismissed before the jury was sworn. The verdict forms reflect the two corporal injury offenses as counts 1 and 3 and the dissuading offense as count 2. During sentencing, the trial court relied on the numbering scheme of the information, not the verdict forms. We do likewise.

About 20 minutes later, appellant called Mary, told her he was really sorry, asked her to return, and told her she would be safe. She returned but, about 30 minutes later, appellant became agitated and began berating Mary's children and accusing her of infidelity. Appellant, over a period of hours, argued with Mary and was physically violent. Appellant head-butted her several times. He held her down on the bed and choked her. Appellant poked her in her chest twice, causing bruises. He grabbed her wrists, causing redness.

The physical abuse was on-going, but at one point she fell asleep. Appellant slapped her and she awoke. Appellant told her she would never see her family again. Appellant also told her, "If you call the police, I'll kill you." (Count 3.) Appellant was loud, "in [Mary's] face," and abrasive. However, appellant's statement was part of a verbally abusive barrage, and Mary did not take appellant's statement seriously. Appellant's statement occurred about four hours after the above mentioned police had left.

Photographs admitted into evidence depict Mary's injuries. One photograph (People's exh. No. 5) depicts an abrasion on her neck near her left collarbone. Another (People's exh. No. 3) depicts the two bruises on her chest. A third (People's exh. No. 2) depicts the redness on her wrists. A fourth (People's exh. No. 4) is a close-up of the redness on her right wrist and on her right forearm near her wrist.

The next morning, on May 18, 2012, Mary went to work. Mary, afraid, later called a hospital, told personnel what had happened, and told personnel she did not want appellant to go to jail. They nonetheless persuaded Mary to go to the police. After work, Mary went to the South Pasadena police station to report what had happened. She later stayed at a motel. Appellant called her, knew what he had done, and apologized. After several weeks, Mary returned home. Mary loved appellant and loved him at the time of the trial.

Count 4 is based on events occurring on June 4, 2012. On that date, Mary came home from work and appellant was belligerent. Appellant told her to leave, but Mary

3

refused to stay in another hotel. Appellant became physically aggressive. He slapped Mary, head-butted her multiple times, and poked her in her chest. Appellant kneed Mary in her right shin, causing a bruise which lasted one to two weeks. Mary did not seek treatment for the injuries she sustained on May 17 or June 4, 2012.

South Pasadena Police Officer Jose Corney testified as follows. On June 4, 2012, Corney went to the scene. He saw that Mary was afraid and appeared to have been crying. Mary's chest was red and flushed as depicted in a photograph (People's exhibit No. 10) and her right leg was bruised with swelling as depicted in a photograph (People's exhibit No. 9). Appellant, in jail, told Corney the following. Appellant and Mary had a verbal argument, they got out of hand, no physical abuse occurred, and Mary tended to overreact. Corney testified that, based on what Corney saw on Mary's body, he did not believe appellant. Appellant also told Corney appellant had a bipolar disorder and took lithium daily.

2. *Defense Evidence.*

In defense, South Pasadena Police Officer Jeff Holland testified as follows. On "May 18," 2012, Holland and another officer went to Mary's apartment. When the officers contacted appellant, he was screaming. Later, he was calm one moment and agitated the next. Holland did not believe appellant was a danger to himself or others. Holland did not take photographs of Mary on May 18, 2012. He took them the next evening when she made the report. He observed bruising on Mary's wrists and a scratch mark on her chest. The photographs Holland took were People's exhibit Nos. 2 through 5.

Dr. Ari Kalechstein, a licensed psychologist, testified as follows. A person who was bipolar could become manic. Mania meant a person would have unbelievable energy, and such a person might be irritable. A manic person would have impaired insight and judgment, and would be more likely to be irritable, assaultive, and verbally abusive.

4

A person in a manic state could engage in goal-directed activity, but such a person was not in a position to think before acting, to make accurate judgments, or to appraise the consequences of their actions. A manic person could be so severely mentally ill the person could develop psychotic symptoms. The Diagnostic and Statistical Manual listed symptoms of bipolar disorder and manic episodes. One symptom of a manic episode was poor judgment, but acting without thinking was not a listed symptom. A manic person could engage in goal-oriented behavior.

Kalechstein opined at trial appellant was in a manic episode during the May 18 and June 4, 2012 incidents, and this was best explained by the fact he was bipolar. An alternative explanation was appellant's conduct was part of a cycle of violence unrelated to the fact he was bipolar, but this was not the best explanation because appellant's conduct occurred when he was not taking his medication. Kalechstein also testified that "during this period of time" there was "evidence of psychosis periodically in the charts."

Portions of Kalechstein's testimony were based on appellant's medical records. Appellant had been diagnosed with bipolar disorder since 2004. On March 5, 2012, a treating physician noted appellant's noncompliance with his medication regimen. The physician noted only a slight impairment in function and indicated appellant was a low risk for being dangerous to himself or others. Beginning in late April through June 2012, the severity of appellant's symptoms, and the frequency of his hospital visits for treatment, increased. In late April and early May 2012, appellant demonstrated impaired judgment.

On April 22, 2012, a social worker found appellant was logical, not angry, and not a threat to himself or others. On April 30, 2012, a treating physician noted appellant's thought process was coherent, relevant, logical, and circumstantial, and appellant presented a low risk for dangerousness to himself or others. Appellant had no psychotic or inappropriate thought content. The physician also indicated on May 4, 2012, appellant was a low risk for dangerousness to himself or others. On June 5, 2012, an initial mental health evaluation of appellant revealed symptoms more indicative of a depressive state.

5

Appellant never used physical violence against anyone except his wife. Appellant was never involuntarily committed, or involuntarily detained pursuant to Health and Safety Code section 5150, by a psychiatric evaluation team.

## ISSUES

Appellant claims (1) the trial court erred by failing to instruct on misdemeanor spousal battery as a lesser included offense of counts 1 and 4, (2) insufficient evidence supports appellant's conviction on count 3, and (3) the trial court erroneously imposed a $500 Penal Code section 1203.097, subdivision (a)(5) probationary payment.

## DISCUSSION

1. *The Trial Court Did Not Err by Failing to Instruct on Misdemeanor Spousal Battery*.

Appellant claims the trial court erred by failing to instruct on misdemeanor spousal battery, a violation of Penal Code section 243, subdivision (e)(1),[2] as a lesser included offense of the offense of willfully inflicting upon a spouse corporal injury resulting in a traumatic condition (hereafter, corporal injury), a violation of Penal Code section 273.5, subdivision (a), i.e., the offense alleged in counts 1 and 4.[3] He argues this was error because there was substantial evidence he did not, within the meaning of section 273.5, subdivision (a), "willfully" inflict corporal injury, and because Mary's injuries were minor. We reject appellant's claim.

"A criminal defendant is entitled to an instruction on a lesser included offense *only* if . . . 'there is *evidence* which, if accepted by the trier of fact, would absolve [the]

---

[2] Penal Code section 243, subdivision (e)(1), states, in relevant part, "When a battery is committed against a spouse, . . . the battery is punishable [as a misdemeanor]."

[3] Former Penal Code section 273.5, subdivision (a), states, in relevant part, "Any person who willfully inflicts upon a person who is his . . . spouse, . . . corporal injury resulting in a traumatic condition is guilty of a felony, . . ." Subdivision (c), states, "As used in this section, 'traumatic condition' means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force."

6

defendant from guilt of the greater offense' [citation] *but not the lesser*." (*People v. Memro* (1995) 11 Cal.4th 786, 871 (*Memro*); first and second italics added.)

Appellant is arguing evidence of his mental health problems negated the element he "willfully" inflicted injury; therefore, the trial court was obligated to instruct on spousal battery as a lesser included offense of each of counts 1 and 4. However, corporal injury is a general intent crime. (*People v. Campbell* (1999) 76 Cal.App.4th 305, 307-309 (*Campbell*).) That crime does not require a defendant specifically to intend to cause the traumatic injury. (*Id.* at p. 308.) Similarly, spousal battery is a general intent crime. (*People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375.) "The only intent required for a general intent offense is the purpose or willingness to do the act or omission." (*People v. Johnson* (1998) 67 Cal.App.4th 67, 72.)

Corporal injury is a battery offense (*People v. Thurston* (1999) 71 Cal.App.4th 1050, 1053) as is spousal battery. "A battery is any *willful* and unlawful *use of force* or violence upon the person of another." (Pen. Code, § 242, italics added.) "The word 'violence' has no real significance. 'It has long been established, . . . that "the least touching" may constitute battery. In other words, *force* against the person is enough . . . .' [Citations.] . . . [A person] only needs to intend to commit the act." (*People v. Mansfield* (1988) 200 Cal.App.3d 82, 87-88.) In sum, corporal injury and spousal battery are battery offenses, and the requisite intent for battery is merely an intent to apply force against another.

We therefore reject appellant's argument regarding the "willfully" element for three reasons. First, Penal Code section 28, subdivision (a), states, "Evidence of mental disease, mental defect, or mental disorder is admissible *solely* on the issue of whether or not the accused actually formed a required *specific intent*, . . . when a *specific intent* crime is charged." (Italics added.) Corporal injury is not a specific intent crime; therefore, evidence of appellant's mental health problems was inadmissible as a matter of law on the issue of appellant's mental state as to counts 1 and 4.

7

Second, the trial court instructed the jury with CALJIC No. 3.32, which stated, "You have received evidence regarding a mental disease or mental disorder of the defendant at the time of the commission of the crimes charged. You should consider this evidence *solely* for the purpose of determining whether the defendant actually formed the required specific intent, which is an element of the crime charged *in Count* [*three*], *namely, dissuading a witness*." (Italics added.) That is, no evidence of appellant's mental health problems was admitted into evidence in this case as to the counts alleging corporal injury, i.e., counts 1 and 4.

Finally, even if evidence of appellant's mental health problems was admitted into evidence to negate the "willfully" element of corporal injury, both that crime and spousal battery contain the "willfully" element; therefore, evidence negating an inference appellant "willfully" applied force for purposes of corporal injury would negate the same inference for purposes of spousal battery. It is therefore not true said evidence would absolve appellant of the greater offense "but not the lesser" (*Memro, supra*, 11 Cal.4th at p. 871). Appellant's argument about the "willfully" element lacks merit.[4]

Appellant also argues the trial court should have instructed on spousal battery as a lesser included offense of each of counts 1 and 4 because Mary's injuries were allegedly minor. However, whether the injuries were minor is not dispositive. What is dispositive is whether appellant willfully inflicted upon Mary corporal injury resulting in a traumatic condition. A " 'traumatic condition' means a condition of the body, such as a wound, or

---

**4** None of the cases cited by appellant compel a contrary conclusion. It is true, as appellant observes, the trial court, imposing the lower term on count 1, relied on the mitigating factor in California Rules of Court, rule 4.423(b)(2), "The defendant was suffering from a mental or physical condition that significantly *reduced* culpability for the crime." (Italics added.) However, the fact the trial court relied upon this consideration for purposes of sentencing to conclude appellant's culpability on count 1 was *reduced* did not mean there was substantial evidence his culpability on that count (or count 4) was *negated* for purposes of the establishment of guilt or that he committed only misdemeanor spousal battery as a lesser included offense of counts 1 and 4.

8

external or internal injury, . . . *whether of a minor or serious nature*, caused by a physical force." (Former Pen. Code, § 273.5, subd. (c), italics added.)

Appellant does not contend as to count 1 or 4 there was insufficient evidence supporting his conviction, or, in particular, insufficient evidence he inflicted upon Mary "corporal injury resulting in a traumatic condition" within the meaning of Penal Code section 273.5, subdivision (a). Nor does he expressly argue Mary's injuries were minor *and were not* "corporal injury resulting in a traumatic condition." In *People v. Beasley* (2003) 105 Cal.App.4th 1078 (*Beasley*), the appellate court concluded there was sufficient evidence supporting a conviction for corporal injury when a woman sustained large bruises on her arms, legs, and back as a result of being struck with a rod. (*Id.* at pp. 1085-1086.) Even if the issue of whether Mary's injuries were minor were dispositive, we have reviewed the photographs of her injuries; the jury was not obligated to believe they were minor.

A trial court's obligation to instruct on a lesser included offense does not authorize the giving of such an instruction as a matter of lenity even though there is no substantial evidence the defendant committed only the lesser included offense. The trial court did not err by failing to instruct on misdemeanor spousal battery as a lesser included offense of counts 1 and 4.

2. *Sufficient Evidence Supported Appellant's Conviction for Dissuading a Witness (Count 3).*

Appellant claims there is insufficient evidence supporting his conviction on count 3. We disagree. Penal Code section 136.1, subdivision (b)(1), states, in relevant part, ". . . every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense . . . : [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer . . . ." Moreover, the court, using CALJIC No. 7.14, instructed the jury concerning this offense an element thereof was "The defendant, with the specific intent to do so, prevented or dissuaded or attempted to prevent or dissuade [Mary] from making a report of such victimization to any peace officer or state or local law enforcement officer . . . ."[5] Appellant argues there is insufficient evidence he harbored the requisite specific intent.

Count 3 was based on appellant's May 17, 2012 statement to Mary, "If you call the police, I'll kill you." Our power begins and ends with the determination whether there is substantial evidence, contradicted or uncontradicted, to support the judgment. (*People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1181-1182.) There was substantial evidence as follows, including substantial evidence of purposive conduct by appellant.

On May 17, 2012, appellant was angry and physical towards Mary. She tried to pack items and leave but he repeatedly engaged in purposive conduct, i.e., he repeatedly threw items out of the suitcase for the purpose of keeping her from leaving. Once Mary and police left, appellant knew police were familiar with his domestic problems and appellant knew he risked detention and/or arrest for any future incident involving Mary and appellant. That is, appellant had a motive to prevent Mary from reporting any future incident or misconduct involving appellant.

---

[5] There is no dispute CALJIC No. 7.14 correctly stated the law.

After Mary left, appellant engaged in purposive conduct, i.e., he told her he was really sorry and asked her to return. He did this for the purpose of having her return. She complied but appellant soon began engaging in the purposive conduct of berating her family and accusing her of specific misconduct, i.e., infidelity. The two argued for hours, then appellant committed the acts constituting the crime of which he was convicted as to count 1, and we have concluded there was sufficient evidence he committed that crime.

It was during the above purposive conduct and physical abuse appellant told Mary, "If you call the police, I'll kill you." He also told her she would never see her family again. The jury reasonably could have believed appellant made the above quoted statement with the specific intent to prevent and dissuade her from reporting to a peace officer the victimization at issue in count 1. (Cf. *People v. Hallock* (1989) 208 Cal.App.3d 595, 598, 607, 610.) After the incident, appellant called her, he knew what he had done, and he apologized.

The jury reasonably could have concluded appellant's above quoted statement prevented Mary from immediately calling the police and caused her to call the police only after hospital personnel persuaded her to do so. We realize Mary testified she did not take appellant's statement seriously. However, the jury reasonably could have disbelieved that testimony as the product of a dysfunctional relationship. Moreover, after she reported the matter to police, she stayed at a motel, and the jury reasonably could have believed she did so because she believed appellant would make good on his threat. Only after a week did she return home.

In any event, Penal Code section 136.1, subdivision (d) states, in relevant part, "Every person attempting the commission of any act described in [subdivision (b)] . . . is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was . . . in fact intimidated . . . shall be no defense against any prosecution under this section."

We hold there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, appellant committed a violation of Penal Code section 136.1,

11

subdivision (b)(1), including sufficient evidence appellant had the requisite specific intent. (*Ochoa*, *supra*, 6 Cal.4th at p. 1206.)

We acknowledge there was evidence appellant suffered from mental health problems, including a bipolar disorder. However, even if appellant was bipolar and/or had other mental health problems, there was also evidence from which the jury reasonably could have concluded his mental health problems did not necessarily preclude him from harboring the mental state required by Penal Code section 136.1, subdivision (b)(1). That is, the jury was not obligated to believe those problems impacted him to the extent they prevented appellant from forming the requisite specific intent at the time he told Mary, "If you call the police, I'll kill you." (See *People v. Ivans* (1992) 2 Cal.App.4th 1654, 1661-1662.)

3. *The $500 Penal Code Section 1203.097, Subdivision (a)(5) Probationary Payment Must Be Stricken.*

During sentencing, the trial court stated, "In count 1 and count 4, $500 domestic violence payment." Respondent concedes the reference to "domestic violence payment" was a reference to a Penal Code section 1203.097, subdivision (a)(5) probationary payment, and any payment under that subdivision was unauthorized in this case because the trial court did not grant appellant probation but sentenced him to prison. We accept the concession. (See *People v. Delgado* (2006) 140 Cal.App.4th 1157, 1163.) An unauthorized sentence may be corrected at any time. (*People v. Huff* (1990) 223 Cal.App.3d 1100, 1106.) We will modify the judgment accordingly.

*DISPOSITION*

The judgment is modified by striking the $500 Penal Code section 1203.097, subdivision (a)(5) probationary payment and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections an amended abstract of judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

13