Filed 7/6/15  P. v. Bates CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B254934 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. VA122627) |
| ARTHUR BATES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brian F. Gasdia, Judge.  Affirmed.

Al F. Amer for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Arthur Bates appeals from the judgment entered following his convictions by jury on three counts of assault on a peace officer with a semiautomatic firearm (counts 1 – 3), with firearm findings, and admissions he suffered a prior felony conviction and a prior serious felony conviction. (Pen. Code, §§ 245, subd. (d)(2), 12022.5, subds. (a) & (d), 12022.53, subds. (b) & (c), 667, subds. (a) & (d).) The court sentenced appellant to prison for 54 years 6 months. We affirm.

## FACTUAL SUMMARY

1. *People's Evidence.*

In the present case, appellant argues he merely displayed his weapon by pointing it in the air and the deputies prematurely fired. The People argue appellant pointed his firearm at deputies and then fired. We set forth below the pertinent facts.

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 (*Ochoa*)), the evidence established that on November 29, 2011, appellant and Melinda Bliss, appellant's sister, were at Bliss's home at 11719 Elmcroft in Norwalk. Bliss called 911, telling the dispatcher appellant had a gun and wanted to kill himself. Bliss said appellant wanted police to shoot him. Appellant ran outside.

About 3:30 a.m., Los Angeles County Sheriff's Deputy Brent Delvalle and his partner, Los Angeles County Sheriff's Sergeant Robert Maybury, received a broadcast about an emergency call placed from the Elmcroft address. Delvalle and Maybury were in uniform in a marked patrol car. Uniformed Los Angeles County Sheriff's Sergeant Christopher Johnson, in a marked Chevrolet Tahoe, also heard the broadcast. Delvalle, Maybury and Johnson (hereafter, the three deputies) each had a 9-millimeter semiautomatic Beretta.

Delvalle testified as follows. When Delvalle's patrol car drove onto Elmcroft, Delvalle saw appellant run into the middle of the street. Appellant was 20 to 30 yards north of Delvalle. Appellant was holding a semiautomatic handgun and a bottle of liquor. Appellant was pacing. When pacing, appellant was holding the gun in his right hand, at his side, and the gun was pointed down. The three deputies exited their vehicles. Maybury and Delvalle were standing behind the open driver's door and open front passenger door, respectively, of the patrol car. Johnson was standing nearby, behind the open passenger door of the Tahoe.

The three deputies were pointing their guns at appellant and yelling for him to drop his gun. Appellant repeatedly yelled, "Shoot me." Delvalle testified appellant walked towards the deputies, leaned forward, and, using his left hand (which was holding the bottle), pointed to his forehead and said, "Shoot me." Appellant was holding the gun in his right hand behind his back. Appellant walked several feet closer.

Delvalle testified that "[a]s [appellant's] walking towards us, he then moves his right hand with the gun and points it at us." When appellant pointed the gun at Delvalle, he heard a gunshot and saw a muzzle flash from appellant's gun. The three deputies returned fire. Appellant, who, up to this point, had been standing, fell and dropped the gun. Delvalle also testified that after he saw the muzzle flash from appellant's gun or heard appellant's gun fire, Delvalle saw several muzzle flashes from appellant's gun and those shots appeared to be fired "towards [Delvalle]." Appellant walked several steps when firing.

During cross-examination, Delvalle testified appellant was shot when he was facing south with his right arm extended forward. Delvalle never saw appellant's right arm in the air, appellant fire from a crouched position, or appellant shoot when he was on the ground. At some point appellant, with the gun, was facing Delvalle, appellant's right hand was extended out, and appellant's gun was "pointed towards the officers." Delvalle saw a muzzle flash from the area adjacent to appellant's shoulder, not the area adjacent to appellant's hip.

3

Johnson testified as follows.  As Johnson approached Elmcroft, he saw appellant running with a gun to the middle of the street.  The three deputies were close to each other.  When the three entered Elmcroft in their vehicles, the patrol car was near the west curb and the Tahoe was in the middle of the street and a little behind the patrol car.

Johnson also testified as follows.  During the incident, appellant was moving around and facing the three deputies.  Appellant pulled the gun from behind his back, "swung it in our direction," and fired at least once.  When Johnson saw the muzzle flash of appellant's gun, appellant was holding it "in our direction" and parallel to the ground.  Johnson then repeatedly fired at appellant.  After Johnson saw the muzzle flash of appellant's gun, Johnson heard the sound of his left front tire deflating as a result of a bullet fired from appellant's gun.  During the standoff, Johnson was about 25 yards from appellant.

During cross-examination, Johnson testified that at some point appellant was on his knees with his gun behind his back, pointing at his forehead, and saying "shoot me."  Appellant later got off his knees with the gun behind his back.  When appellant, using his right hand, brought the gun from behind his back in a threatening manner, Johnson began shooting.  Johnson might have fired before appellant fired.  Johnson saw the muzzle flash of appellant's gun, but was uncertain whether Johnson fired when appellant's gun was coming out or when its muzzle flashed.  The gun came from behind appellant's back, but Johnson did not remember whether he fired after he saw the muzzle flash.  Johnson testified it all happened "pretty simultaneously."  Johnson testified at the preliminary hearing appellant's gun "came out from behind his back aiming towards us."

Maybury testified as follows.  During the incident, appellant got on his hands and knees, yelling for police to shoot him.  Appellant immediately stood.  Appellant's gun was behind his leg about four or five seconds.  Appellant then abruptly began walking towards the deputies, raised his gun towards the deputies, and fired.  Maybury returned fire.  It was possible the muzzle flash from appellant's gun came from below appellant's knee, but Maybury did not know where appellant's arm was.

4

Kathleen Winstead testified as follows. Winstead was on the porch of her residence at 11708 Elmcroft. During the incident, she saw appellant bow three times and put his hand behind his back. When appellant's hand was behind his back, his hand was where his belt would be. Appellant brought his hand up, fired, and police returned fire. The court observed Winstead raised her right hand and arm to shoulder level when she testified appellant brought his hand up. Winstead then testified, "it wasn't at shoulder level when he shot." When appellant brought his hand forward, he was extending his hand in front of him "towards the deputies." As soon as appellant brought his hand in front of him, he fired. Appellant was struck by bullets and fell to his knees. Shots were not fired when appellant fell to his knees. Appellant eventually lay down.

Winstead also testified appellant was not aiming at anyone but just brought his hand up and shot. Winstead, amplifying on that testimony, gestured, and the court indicated Winstead, by her gesture, was testifying appellant did not use two hands to shoot. According to Winstead, appellant fired twice. Nothing was obstructing Winstead's view when appellant "shot at the police" and police returned fire. Winstead could not see where the police were exactly but knew they were at the end of the street.

Johnathan Winstead (Johnathan), the 71-year-old husband of Winstead, testified as follows. Johnathan heard gunshots and a woman scream, and he called 911. Police arrived probably 15 or 20 minutes later. During that period, appellant was walking back and forth down the street. Johnathan thought that, during that period, appellant shot in the air, but Johnathan was uncertain.

Police arrived and appellant walked towards them. Police were telling appellant to drop his gun. Appellant had a gun behind his back. Johnathan thought appellant was holding the gun in his right hand. Johnathan testified appellant took his hand from behind his back, bowed three times, "came up and – pow, ([gesturing])," and that was when "they" started shooting. According to the court, Johnathan, when he gestured, "raised his right hand forward and upward about head level, then brought the hand forward, pointing forward, dropping his finger and hand below head level." When appellant engaged in the above discussed conduct, he shot his gun once and police

5

returned fire. Johnathan believed appellant shot in the air two or three times before police arrived. Johnathan vaguely remembered police interviewing him after the incident. During that interview, Johnathan denied seeing appellant shoot.

Los Angeles County Sheriff's Deputy David Kim, a firearms examiner, testified as follows. A gun was found at the crime scene. Appellant would have been standing near cartridge cases in the middle of the street. The distance between the cartridge cases and the Tahoe's bumper was about 70 to 100 feet. A bullet entered the Tahoe's bumper and exited into the wheel well. The bullet "travelled generally from north to south, near parallel to the ground or slightly maybe a couple degrees upward angle." The bullet came to rest inside the left front tire of the Tahoe.

The muzzle of the gun that fired that bullet "should" have been 12 inches off the ground and the bullet entered the fender and passed through the wheel well in a straight line. The bullet did not ricochet off the ground and was fired from "approximately" 12 inches off the ground. The trajectory of the bullet most likely did not result from a person shooting from the shoulder and did not result from a person shooting from the hip.

Los Angeles County Sheriff's Deputy Ivan Chavez, another firearms examiner, determined five cartridges found at the crime scene were fired from the gun found at the crime scene. The bullet recovered from the Tahoe's tire had rifling characteristics similar to that gun, but Chavez could not say the bullet was fired from that gun. If the deputies were using 9-millimeter semiautomatic Berettas, the deputies did not shoot the Tahoe's tire.

2. *Defense Evidence.*

In defense, Sylvia Comparini, a physician specializing in forensic pathology, testified as follows. Appellant was shot multiple times. Comparini came to conclusions about appellant's wounds and the order in which they were inflicted. She did an "estimated" correlation of which wound was the first wound, "and for sure which [was] the last one."

6

The first bullet that struck appellant went through the middle back portion of his upper right arm, and exited about four to six inches from his right shoulder. Comparini testified her "medical conclusion beyond a probable degree of medical certainty" was appellant's "right arm at the time it was struck by the bullet was up in the air, with the arm at least at 180-degree from the body exposing the . . . back of the arm." (*Sic*.) It was highly unlikely the injuries to appellant's right arm were caused while he was holding it straight forward. Appellant's right arm could not have been perpendicular to his body, otherwise his elbow would have been shattered.

Comparini concluded that "if" the bullet that struck appellant's right arm was the first bullet that struck him, it caused him to rotate with the result he was shot in the leg. The last bullet wound was to appellant's left leg. During cross-examination, Comparini denied knowing whether appellant pointed his gun at deputies before he was shot.

A sheriff's detective was presented with a hypothetical question about whether a deputy's use of deadly force was justified if, inter alia, a suicidal person who had a gun behind his back raised it in the air and fired. The detective testified he could understand the deputy's use of deadly force when the person was pulling the gun from behind the person's back. A deputy's use of deadly force might not be justified if the person was firing in the air and the deputy was confident no one was in danger.

### ISSUES

Appellant claims (1) insufficient evidence supports his convictions and (2) the trial court committed instructional error.

### DISCUSSION

1. *Sufficient Evidence Supports Appellant's Convictions.*

Appellant claims insufficient evidence supports his convictions. We disagree. The jury convicted appellant on three counts of assault on a peace officer with a semiautomatic firearm in violation of Penal Code section 245, subdivision (d)(2). As appellant observes, the trial court, using CALCRIM No. 860, instructed on the elements of that offense. There is no dispute CALCRIM No. 860 correctly states the law. Indeed, there is no real dispute as to the sufficiency of the evidence except as to the first four

7

enumerated elements in CALCRIM No. 860 which, if satisfied, establish assault with a firearm.[1]

If there is substantial evidence a defendant, with the requisite criminal mental state for assault with a firearm, and with the present ability to apply force with a firearm to a person, concurrently engages in certain acts, there is substantial evidence the defendant committed assault with a firearm. Those certain acts include (1) drawing the firearm and holding it in such a position as enables the defendant to use it before the person could defend himself or herself, at the same time declaring the defendant's determination to use it against the person, (2) presenting the firearm at a person who is within its range, (3) pointing the firearm, not at, but towards, the person, (4) pointing the firearm, not at, but downward, between persons, with the firearm thus in a position to be used instantly, (5) pointing the firearm at the person, and/or (6) firing the firearm at the person. (*People v. Raviart* (2001) 93 Cal.App.4th 258, 262-264 (*Raviart*).)

---

[1]     CALCRIM No. 860 states, in relevant part, "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. *The defendant did an act with a* semiautomatic *firearm that by its nature would directly and probably result in the application of force to a person;* [¶] 2. *The defendant did that act willfully;* [¶] 3. *When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;* [¶] 4. *When the defendant acted, he had the present ability to apply force with a* semiautomatic *firearm to a person;* [¶] 5. When the defendant acted, the person assaulted was lawfully performing his duties as a peace officer; [¶] AND [¶] 6. When the defendant acted, he knew, or reasonably should have known, that the person assaulted was a peace officer who was performing his duties." (Italics added.)

8

The testimony of a single witness is sufficient to support a conviction unless the testimony describes facts or events that are physically impossible or inherently improbable. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) In the present case, there was ample, credible evidence from the testimony of not merely one witness, but the testimony of the three deputies, Winstead, and Johnathan that appellant, with the requisite mental state and present ability, and as part of a continuum, effectively engaged in all of the six above enumerated acts. There was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, appellant committed assault on a peace officer with a semiautomatic firearm (counts 1 through 3). (*Ochoa, supra,* 6 Cal.4th at p. 1206; *Raviart, supra*, 93 Cal.App.4th at pp. 262-266.) None of appellant's arguments concerning allegedly conflicting evidence compel a contrary conclusion. (See *People v. Hernandez* (1990) 219 Cal.App.3d 1177, 1181-1182.)

2. *No Instructional Error Occurred.*

Appellant claims the trial court committed instructional error. He makes four main arguments. First, appellant argues the trial court failed to define the term "assault" for purposes of the crime of assault on a peace officer with a semiautomatic firearm (counts 1 through 3). However, the court gave the jury CALCRIM No. 860, which contained all the elements of assault (relating them to assault on a peace officer with a semiautomatic firearm). (See the italicized portion of fn. 1, *ante*.) CALCRIM No. 860 adequately instructed on the definition of assault; therefore, no error occurred.

Second, appellant argues the trial court erred by failing to instruct on assault, assault with a deadly weapon, and assault on a person with a semiautomatic firearm (Pen. Code, § 245, subd. (b)) as lesser-included offenses of assault on a peace officer with a semiautomatic firearm. He suggests when parts of each party's evidence are considered

9

together, there was substantial evidence appellant engaged in various conduct[2] in response to which the three deputies prematurely fired at appellant and thus used excessive force, with the result each deputy was not "engaged in the performance of his . . . duties" within the meaning of Penal Code section 245, subdivision (d)(2). Appellant therefore further suggests that, while he reacted to the excessive force by assaulting the three deputies, he thereby committed only the above mentioned lesser-included offenses and not assault upon a peace officer with a semiautomatic weapon.

However, there was no substantial evidence appellant committed only assault (absent any firearm). Similarly, there was no substantial evidence appellant committed assault with a deadly weapon that was not a semiautomatic firearm (or assault with a firearm that was not a semiautomatic firearm). A trial court has no duty to instruct on a lesser-included offense when there is no substantial evidence to support the instruction. (*People v. Souza* (2012) 54 Cal.4th 90, 115-116.)

As to whether the trial court erred by failing to instruct on assault on a person with a semiautomatic firearm (Pen. Code, § 245, subd. (b)) as a lesser-included offense of assault on a peace officer with a semiautomatic firearm, we note the following. Appellant's third scenario (see fn. 2, *ante*) was he was "crouched[,] positioning the weapon towards the police cruiser approximately twelve inches from the ground."

However, given the close proximity of the three deputies and their vehicles, and the significant distance between, on the one hand, said deputies and their vehicles and, on the other, appellant, there was substantial evidence that if appellant was crouched and "positioning the weapon towards the police cruiser approximately twelve inches from the ground," he was pointing his gun in the direction of, if not at, the three deputies. That is,

---

2    As to appellant's conduct, appellant suggests five evidentiary scenarios, i.e., first, he "displayed the weapon by pointing it in the air above his head"; second, he "[got] down on all fours" and "was compliant[,] posing no risk to deputies and [had] submitted"; third, he "crouched[,] positioning the weapon towards the police cruiser approximately twelve inches from the ground"; fourth, he was "firing in the air" but was a danger to no one; and fifth, he "exhibit[ed] the firearm . . . [in] an effort to provoke deputies to engage in order to fulfill [his] suicidal objective."

10

in the third scenario, appellant was committing, as to each of the three deputies, assault on a peace officer with a semiautomatic firearm; therefore, the three deputies, by firing at appellant in response, did not use excessive force. It follows appellant did not react to excessive force by committing the lesser-included offense of assault on a person with a semiautomatic firearm and thus the court did not err.

Moreover, as to any scenario, there was strong evidence from the People's case that appellant did exactly what the three deputies essentially testified he did, i.e., as to each of the three deputies, appellant committed assault on a peace officer with a semiautomatic firearm in an effort to cause them to kill appellant. Further, the court, using CALCRIM No. 860, told the jury elements of the present offenses were that peace officers were lawfully performing duties as peace officers and appellant knew or reasonably should have known they were peace officers performing their duties. The jury, so instructed, expressly found as to each count the respective peace officer was "engaged in the performance of his duties" for purposes of Penal Code section 245, subdivision (d)(2), a finding inconsistent with appellant's premise the three deputies used excessive force with the result they were not engaged in the performance of their duties within the meaning of that subdivision.

Accordingly, even if the trial court erred by failing to instruct on assault on a person with a semiautomatic firearm (or by failing to instruct on any other offense) as a lesser-included offense of assault on a peace officer with a semiautomatic firearm, the error was not prejudicial. (Cf. *People v. Breverman* (1998) 19 Cal.4th 142, 178 (*Breverman*); *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

Third, appellant argues the trial court erred by failing to instruct on brandishing a firearm (Pen. Code, § 417, subd. (a)(2)) as a lesser offense of assault on a peace officer with a semiautomatic firearm. We disagree. Brandishing a firearm is not a lesser-included offense of assault with a firearm (*People v. Steele* (2000) 83 Cal.App.4th 212, 218 (*Steele*); cf. *People v. Escarcega* (1974) 43 Cal.App.3d 391, 393, 396-400; contra, *People v. Wilson* (1967) 66 Cal.2d 749, 764); therefore, the trial court had no duty to

11

instruct on brandishing as a lesser-included offense of assault on a peace officer with a semiautomatic firearm.

Brandishing is a lesser-related offense of assault with a firearm. (*Steele, supra*, 83 Cal.App.4th at p. 218.) However, during jury deliberations, the prosecutor objected to the court giving the jury an instruction on brandishing as a lesser-related offense of assault on a peace officer with a semiautomatic firearm. An instruction on a lesser-related offense is proper only upon the mutual assent of the parties. (*People v. Taylor* (2010) 48 Cal.4th 574, 622.) Given the prosecutor's objection, the court did not err by failing to instruct on brandishing. (*Ibid.*)[3]

Fourth, appellant argues the trial court erred by failing to instruct sua sponte on self-defense. However, first, a defendant does not have the right of self-defense if the defendant provokes a fight or quarrel with intent to create an excuse to use force. (*People v. Ramirez* (2015) 233 Cal.App.4th 940, 947.) Even if self-defense were otherwise available to appellant, it was unavailable here because appellant, when displaying the gun, provoked a fight or quarrel with the three deputies with (1) the intent of causing them to shoot at him and (2) the intent of thereby creating an excuse to use force against them. Second, there was no substantial evidence appellant *subjectively believed* either (1) he was in imminent danger of being killed or suffering great bodily injury, or (2) the immediate use of deadly force was necessary to defend against that danger. No witnesses testified concerning appellant's beliefs on these issues. Self-defense was inapplicable. (Cf. *People v. Hill* (2005) 131 Cal.App.4th 1089, 1102.)

---

[3]     Even if the trial court erred by failing to instruct on brandishing as a lesser offense, there was strong evidence any brandishing was part and parcel of appellant's commission of assault on a peace officer with a semiautomatic firearm. Appellant concedes we review under the *Watson* standard any trial court error in failing to instruct on a lesser-related offense. Any trial court error in failing to instruct on brandishing as a lesser-included or lesser-related offense of assault on a peace officer with a semiautomatic firearm was not prejudicial. (Cf. *Breverman, supra*, 19 Cal.4th at p. 178; *Watson, supra*, 46 Cal.2d at p. 836.)

Finally, after the court gave the jury CALCRIM No. 860, the jury found each of the three deputies was engaged in the performance of his duties, a finding inconsistent with a conclusion they engaged in an unlawful assault warranting action by appellant in self-defense.  Any trial court error in failing to instruct on self-defense was harmless under any conceivable standard.  (Cf. *Watson, supra*, 46 Cal.2d at p. 836; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)  No instructional error occurred.

### *DISPOSITION*

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



EDMON, P. J.



EGERTON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.